Murry P. Nossiter, Appellant, *v.* Bernard D. Nossiter, Individually and as Successor Trustee, Respondent, et al., Defendants.

Order appealed from affirmed.

Breitel, J. (dissenting). Despite the number of documents and affidavits in this case there is not presented any triable issue of fact and the motion for partial summary judgment on the complaint and for dismissal of the counterclaim should have been granted.

The motion turns on a detailed and lawyer-drawn written agreement. The construction of one of its paragraphs is disputed, and its effect sought to be avoided by defendant on the grounds of fraud, ambiguity, and mutual mistake.

The action is by a father against his former wife, now remarried, and a son. The relations, needless to say, are embittered. The appeal involves only the father and the son.

The written agreement was designed to arrange for the settlement of certain tax deficiencies assessed by the Federal Government, and was executed while the father and mother were engaged in litigation with one another. There had already been matrimonial difficulties and at least one newspaper scandal. Lawyers and accountants for the parties handled the negotiations and the drafting of the agreement.

This is the background for the agreement.

The plaintiff, Murry, who is the father and husband, and Rose, the mother and wife, had been engaged in a partnership in the textile and ribbon business. Murry had a 70% interest. Rose had a 30% interest. Concededly, for tax purposes, trusts were set up by Rose in the sum of $500 (sic) each, for minor sons Bernard, the defendant, and Murry Paul, Jr. The trusts were partners in the ribbon business set up as a separate partnership. The older partnership sold the merchandise to the newer one. It was sufficiently successful that the trusts

paid income taxes for three years in the aggregate amount of $555,871. Concededly, Rose did not participate in this business but plaintiff Murry " assisted them in their operations ".

The day came when the Federal revenue agents looked over the business structures that had been set up and exacted a toll on behalf of the government. This was less than four years after the enterprises had been set up. As stated in the letter of the accountants, addressed to Rose:

" In 1943, you were the grantor of two Trusts, one for each of your sons. Mr. Weingarten, as Trustee under both Trusts, went into business under the name of Industrial Ribbon Co., a partnership, which firm did business from July 15, 1943 to June 5, 1944. The partnership was dissolved and succeeded by a partnership known as the Bermur Ribbon Co.

" The Treasury Department examined the income tax returns of both partnerships to November 30, 1945. The Department has rendered formal reports disregarding both partnerships as taxable entities and ascribing all of the income of both partnerships to the partnership of Murry P. Nossiter & Co. Murry P. Nossiter & Co. is a partnership in which Murry P. Nossiter had a 70% interest and you had a 30% interest.

" The additional income taxes proposed by the Department covering the years 1943, 1944 and 1945 are as follows:

| | |
|---|---:|
| Murry P. Nossiter | $557,656.50 |
| Rose Nossiter | 215,867.30 |
| | 773,523.80 |
| " Less: Credits for Taxes Paid by the Two Trusts | 555,871.00 |
| Net additional taxes | $217,652.80 " |

It will be observed that the origin of the separate trust and partnership entities stemmed from the business of Murry and Rose, and that the tax difficulties arose solely from the disregard of the separateness of the entities by the Federal Government. The Nossiters bowed to this demand of the Federal Government. A compromise settlement for the payment of the tax deficiencies was negotiated and was imminent when the written agreement in suit was executed.

The agreement recites that Murry consents to pay a tax deficiency of $50,115.47 and that Rose consents to pay a tax deficiency of $125,833.27. As a part of this agreement the refunds due the trusts were to be applied to the payment of both these deficiencies. These refunds arose of course from the overassessments on the trusts and turned upon the allocation of the whole tax to the parent and the parental partnership. After application of the refunds to the tax deficiencies it was contemplated that a net deficiency of $30,003.28 would remain. This net deficiency, under the agreement in suit, was to be paid by Murry, and him alone. He also agreed to pay any interest that would be assessed on the deficiency.

The value of this offset procedure — allocating refunds to deficiency assessments — was the avoidance of additional penalties and interest on the deficiencies, — no small matter with sums of this size.

We now come to the paragraph of the agreement in suit upon which the entire action turns. It was provided: " 3. Bernard D. Nossiter agrees that any refunds accruing under the settlement hereinabove mentioned to him either as sole Successor Trustee of the trust for Murry P. Nossiter, Jr., or as sole distributee of the

trust for Bernard D. Nossiter (now liquidated), or otherwise, are to be applied against the deficiency in tax assessed against Rose Nossiter and the balance thereof against the deficiency in tax assessed against Murry P. Nossiter. Any interest upon said refund or refunds is similarly to be applied against saia deficiencies, or if the same is not applied but paid over to said Bernard D. Nossiter in any capacity or paid to anyone in his behalf, said sum representing said interest on said tax refunds shall promptly be paid over to Murry P. Nossiter ".

Bernard agrees that under this clause he owes to Murry the interest he received on the tax refunds, but he claims that he is entitled to first deduct the income taxes that are chargeable on such interest received from the Federal Government. That is the issue in this action.

It should be noted that the interest is on refunds accruing to Bernard " either as sole Successor Trustee of the trust for Murry P. Nossiter, Jr. or as sole distributee of the trust for Bernard D. Nossiter (now liquidated), or otherwise ". These are not funds accruing to Bernard on taxes paid on enterprises initiated, operated or owned by Bernard individually, nor are they related to assets earned or acquired by him from his personal efforts. There are no facts averred that the sons or the mother handled the profitable ribbon business. Indeed, Bernard assigns as one of the reasons for his difficulties with his father, his, Bernard's, desire to become a newspaper man, which he succeeded in becoming.

Moreover, it is evident from the history recited that the several trusts and partnerships were, as the Federal Government inexorably insisted, to the chagrin of the Nossiters, a common patrimony owned 70% by Murry and 30% by Rose.

It is now appropriate to address ourselves to the claims of Bernard that there are issues of fact to be tried.

First, he says the clause is ambiguous on its face. While the clause provides that the interest is to be paid promptly to Murry, there is no reference to any liability for taxes on the interest. An omission does not make an ambiguity, merely because the matter omitted is not expressly excluded. If that were not true an impossible burden would be placed on draftsmen. The language that the interest be paid over is clear enough. There are any number of agreements that provide for payments of funds, having a tax consequence to the payer, and it is never considered requisite that one contract expressly as to tax impact. If that were not so, there would again be placed an impossible burden on draftsmen. Bernard says that the words " is similarly to be applied" raises a doubt as to what " similarly " means in that context. But again " similarly " is followed by the words " to be applied against said deficiencies ", which evidently means as the principal refunds had been applied to the tax deficiencies, first, to apply to the deficiency against Rose, and then to the deficiency against Murry. It could certainly mean nothing with reference to a tax impact on the payer, merely because refunds were not taxable as a return of principal. It is submitted that there is no patent ambiguity.

Second, Bernard says that he and his mother were assured that they would face no tax liability as a result of the compromise and the agreement of Murry to pay any tax deficiency. Apart from the fact that these oral statements were part of the negotiations, merged in the agreement, and to which the parol evidence rule in its classic sense applies, the promises were kept. Neither Bernard nor Rose is required to meet any tax liability arising out of the compromise and the underlying deficiency assessments.

Third, Bernard claims that there were representations that the agreement would leave him and Rose free from any liability whatsoever. Again, there was

performance as to that. Liability arising from taxes due on payments received with which an agreement is to be performed is not liability on the performance, and the representations relied on go no further. But more, these are not representations of fact upon which fraud or mutual mistake may be based. At best they are expressions of opinion — and legal opinion at that — and with reference to a written document carefully drawn by lawyers and accountants acting purportedly for both parties. To top it off, Bernard and Rose had their own lawyer.

The affidavits of Bernard, Rose and their lawyers may be scanned with a most generous eye, and there appears not a word that expressed any intention to save Bernard or the trusts any tax burden that might be imposed on interest paid on tax refunds. Should they testify, if allowed, to what they aver in their affidavits, there would be made out neither defense nor counterclaim. But what they would wish to testify is not in fact admissible. The principles of merger of negotiations in written agreements and the parol evidence rule would estop them.

Bernard's position, as reflected in the affidavits, is reduced to the claim that the omission with regard to interest on the refunds was inadvertent and resulted from a failure to contemplate that consequence, and that it is inconsistent with the negotiation assurances that the compromise with the Federal Government would be effected without " cost " to him or his mother. That is not enough. Written agreements are not to be recast in the light of later discoveries and in accordance with a view of the equities by court or jury after the event. Nor is it the policy of our law to open the floodgates of oral testimony to vary or contradict the terms of written agreements, clear on their face, free of latent ambiguity, and untainted by either mutual mistake or fraud. Bernard has shown no ground for penetrating the written document, either to show a different intention, an ambiguity requiring resolution by oral proof, or that he was deceived by fraud. At best, he argues — and his affidavits are argumentative — that the result achieved by his written agreement should not abide, in the light of what he now knows as to the tax impact of interest paid to him on tax refunds.

Actually, it does not follow that the tax impact incurred is not precisely what was contemplated. The assets and income involved in the several partnerships and trusts arose from a common fund. Murry bore the responsibilities, after applying tax refunds, of meeting the tax deficiency inclusive of interest that might be assessed on the deficiencies. All the assets and moneys involved, including the interest on the refunds, and including any tax payable on such interest, are in the larger sense (as the Federal Government saw it) debits and credits against the " common pot ", divided, unsuccessfully, for tax purposes. Murry alone, as one of the " partners ", was to bear the net deficiency. He asked and received as an offset the amount of interest received on refunds. Bernard and his brother as beneficiaries of trusts consisting of assets, in the initial amount of $500 each, contributed by the family business, and not earned by them, may suffer a slight depreciation as a result of a tax due,— and properly placed against the aggregate assets. Even the latter-day discovered equity in Bernard's favor, doctrine of merger and the parol evidence rule aside, is far from clear, if not nonexistent.

When we examine further the agreement in suit, more appears to sustain the view that the written bargain as made may well have been thus intended, and that speculating as to the balance of the equities may be vain indeed. In paragraph 7(a) of the agreement it is again provided that Murry is to pay certain tax deficiencies, whether imposed on him or Rose, but that the " refunds resulting from over-assessment, together with interest thereon, accruing to Bernard D.

Nossiter, individually or as Successor Trustee" will be applied against said tax deficiencies. And then,—and it is significant — Murry agrees in paragraph 7(b) that he will admit the validity of the 1943 trusts and will bring no action to rescind the trusts and "will waive any right to recover against the other parties hereto any deficiency in tax paid by him in accordance with the terms of this agreement, and will release all the other parties hereto from all manner of claims or suits he may have against them in respect to the payment of said deficiency in tax or with respect to interest which may have accrued thereon".

Thus, we see that Murry gave a large consideration for what he was to receive. He undertook to pay the net tax deficiency, and he yielded the right to question the validity of the very trusts that the Federal Government had treated as a tax dodge, and from which was to emanate the very interest on refunds involved in this action. We note again that the refunds, the interest in the refunds, and the income tax on such interest, all relate to assets or income in the trusts as they were, or as they have devolved on the son, a minor in 1943, who has now reached his majority, and whose earnings were never the source of these funds.

Not only the law but practical wisdom, in a situation such as this, bespeak reliance on the written word, and avoidance of the interested and embittered mouthings, after the event, of father, mother and son, now in unnatural discord.

The order denying partial summary judgment on the complaint and dismissal of the counterclaim, insofar as appealed from, should be reversed, and the motion granted.

Peck, P. J., Dore, Callahan and Bergan, JJ., concur in decision; Breitel, J., dissents and votes to reverse and grant the motion, in opinion.

Order, so far as appealed from, affirmed, with $20 costs and disbursements to the respondent. [See 284 App. Div. 875.]